IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                                                    CRIMINAL NO. 3:16-cr-00045-GHD-RP

JASON L. MONCRIEF                                                                              DEFENDANT

MEMORANDUM OPINION DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

In the case *sub judice*, the Government charges the Defendant Jason L. Moncrief (the "Defendant") with knowing possession of unregistered firearms, to include destructive devices, in violation of 26 U.S.C. § 5861(d). *See* Indictment [12]. On August 26, 2016, the Defendant filed a motion to suppress evidence [25]. The Government filed a response. The Court subsequently held a hearing on the motion to suppress on November 4, 2016, and the parties filed post-hearing briefing [42, 44, & 48]. On November 29, 2016, the Defendant filed a motion to strike [50] certain portions of the Government's rebuttal brief [48]. Upon due consideration, the Court finds that the motion to suppress [25] must be denied, and the motion to strike [50] must be denied as moot.

*I. The Defendant's Arguments*

The Defendant requests that all physical evidence and statements be suppressed based on law enforcement officers' violation of the Constitution and *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The Defendant specifically argues the following in his motion to suppress: **(1)** law enforcement "fail[ed] to have adequate probable cause to stop" his vehicle; **(2)** he was wrongfully arrested and charged for trespass; **(3)** while the Defendant was being held in illegal custody, law enforcement illegally searched the Defendant's vehicle "without consent or a search warrant"; **(4)** law enforcement illegally seized "certain items, things and testimony from [the D]efendant, the passengers of [D]efendant's automobile and from the automobile in gross and utter violation of" the Defendant's Fourth, Fifth, and Fourteenth Amendments; **(5)** while held in

1

illegal custody, the Defendant was subject to unlawful interrogation by officers of the Southaven Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") in violation of the Defendant's rights under the Fifth, Sixth, and Fourteenth Amendments; and **(6)** the unlawful interrogation resulted in the Defendant's statement/confession/admission that "was not freely and voluntarily given but was the product of police duress, coercion, physical and mental torture and harassment, coupled with promises of favor made by police."

The Defendant brings a fruit-of-the-poison-tree challenge to the constitutionality of the events following the *Terry* stop and search of his automobile, including his arrest and interrogation. Finally, the Defendant asserts that this Court lacks jurisdiction because the alleged criminal violation occurred in Tennessee, not Mississippi. In his motion to suppress, the Defendant states with respect to the stop that law enforcement officers "had neither a reasonable, [n]or particular suspicion to believe that [the Defendant] violated any traffic [laws] or was in fact committing any trespass on Mississippi property" and that Defendant was at the time physically located in a cemetery in Memphis, Tennessee—not in Mississippi—"therefore outside the jurisdiction of this court." Def.'s Mot. Suppress [25] at 4–5.

## *II. The Government's Arguments*

The Government argues in response that the law enforcement official, Officer Chase Joiner, possessed a reasonable suspicion to believe that some criminal activity might be afoot when he conducted the traffic stop of the Defendant and thus that the stop was not in violation of the Constitution. The Government specifically maintains that Officer Joiner encountered the Defendant, after spotting the illumination from the Defendant's flashlight shining near the church cemetery and that the Defendant fit the description previously reported of a white male driving a green Ford Taurus and trespassing on property owned by Brown Missionary Baptist Church ("Brown Baptist"). The Government further maintains that the Defendant drove into the church's parking lot and confronted the officer. After Officer Joiner stopped the Defendant, the

2

Government argues that, based upon the totality of the circumstances, reasonable suspicion quickly escalated into probable cause to search the Defendant's vehicle pursuant to the automobile exception in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). Specifically, according to the Government, Officer Joiner noticed that the Defendant was "acting extremely nervous"; had a large flashlight in his lap and a lighter torch in his hand; was "evasive in answering" the officer's questions; when asked if there were any weapons in the vehicle, "responded that he would 'rather not say' "; and refused to answer the officer's question of whether there were narcotics in the vehicle. The Government argues that the K-9 partner detected narcotics in the Defendant's vehicle during an open air sniff test. The Government further maintains that Officer Joiner was justified in asking the Defendant to step out of the vehicle based on *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S. Ct. 882 (1997). Therefore, the Government maintains that the totality of the circumstances was that Officer Joiner had reasonable suspicion for the traffic stop and that the subsequent search, arrest, and interrogation are legal.

Second, the Government argues that the Defendant's statements were voluntary and made free of coercion, duress, or torture. The Government maintains that both interviews of the Defendant took place in custodial settings where law enforcement complied with the dictates of *Miranda*, reading the Defendant *Miranda* warnings on video before the non-biographical questioning began. The Government does acknowledge that questionable behavior by Detective Brandon Rushing occurred during the last approximate 2 minutes and 30 seconds of the first interview, during which time Detective Rushing struck a cup of water onto the Defendant. However, the Government maintains that that incident did not impact the Defendant's free and voluntary statement. The Government maintains that the incident did not affect the subsequent interview, which was appropriate in all respects.

Finally, the Government argues that this Court maintains proper jurisdiction over the case, because the Defendant was first spotted in the church parking lot in Southaven, Mississippi, drove

3

south onto Swinnea Road from the cemetery parking lot, then turned west into the church parking lot, all occurring within the State of Mississippi and while being in possession of the illegal destructive devices.

### III. Discussion and Analysis

First, the Court addresses the Defendant's challenge to territorial jurisdiction and venue, specifically, the Defendant's argument that the Court lacks jurisdiction because the alleged criminal acts occurred outside this Court's jurisdiction.

The Court does not take lightly a challenge to venue, as "the venue right . . . is . . . borne of fundamental notions of fairness as conceived by our Constitution's framers." *See United States v. Stratton*, 649 F.2d 1066, 1079 (5th Cir. 1981). However, upon careful consideration of the issue, the Court finds that in the case *sub judice* venue is proper in the Northern District of Mississippi.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. Rule 18 of the Federal Rules of Criminal Procedure provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18. Title 18 U.S.C. § 3237(a) provides:

> Except as otherwise expressly provided by an enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"The burden of proof to establish venue is not as onerous as the burden required for proof of an element of a crime." *United States v. Martino*, 648 F.2d 367, 400 (5th Cir.), *aff'd sub nom. Russello v. United States*, 464 U.S. 16, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983). A defendant may

4

be convicted despite a challenge to venue "if, viewing the evidence in the light most favorable to the Government, a rational jury could find that the Government established venue by a preponderance of the evidence." *United States v. Ramirez*, 555 F. App'x 315, 318 (5th Cir. 2014) (per curiam) (citing *United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009)). "[P]reponderance of the evidence . . . can be entirely circumstantial." *United States v. Gonzalez*, 236 F. App'x 962, 964 (5th Cir. 2007) (per curiam) (citing *United States v. Solis*, 299 F.3d 420, 444–45 (5th Cir. 2002)). Thus, "there need not be direct proof of venue where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid." *United States v. Turner*, 586 F.2d 395, 397 (5th Cir. 1978), *cert. denied*, 440 U.S. 926, 99 S. Ct. 1258, 59 L. Ed. 2d 480 (1979). "If the Government shows by a preponderance of the evidence that the crime was committed in the trial district, both territorial jurisdiction and proper venue are established." *United States v. White*, 611 F.2d 531, 535 (5th Cir. 1980).

The Defendant and the Government agree that the Defendant's family owns property in Tennessee, adjoining Brown Baptist property, and that Brown Baptist has two large church campuses, a north campus at Stateline Road and a south campus on Swinnea Road. *See* Suppression Hr'g Tr. [43] at 42. The Defendant and the Government further agree that after Officer Joiner shined his patrol car spotlight on the Defendant, the Defendant traveled from the Brown Baptist cemetery, crossed the state line into Mississippi, turned south onto Swinnea Road, and made a right turn into the Brown Baptist parking lot driveway, which is in Southaven, Mississippi. *See* Gov't's Mem. Supp. Denying Def.'s Mot. Suppress [42] at 2–3; Def.'s Mem. Supp. Mot. Suppress [44] at 2. *See also* Suppression Hr'g Tr. [43] at 93 (land surveyor Mark Forsythe's testimony). The Defendant and the Government further agree that the Defendant voluntarily drove his vehicle into the church parking lot (in Southaven, Mississippi) towards Officer Joiner's patrol car. *See* Gov't's Mem. Supp. Denying Def.'s Mot. Suppress [42] at 3;

Def.'s Mem. Supp. Mot. Suppress [44] at 2. The Government charges the Defendant with knowing possession of unregistered firearms, to include destructive devices, and that the Defendant had the devices in the vehicle with him when he pulled into the church parking lot (in Southaven, Mississippi). Southaven, Mississippi lies within the judicial district of the Northern District of Mississippi. The Court is satisfied based on these uncontroverted facts that the Government has established by a preponderance of the evidence that venue lies in the Northern District of Mississippi. The Court now turns to the remaining arguments in the motion to suppress.

" 'The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.' " *United States v. Vo*, 589 F. App'x 720, 723 (5th Cir. 2014) (per curiam) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Although the Fourth Amendment protects persons against unreasonable searches and seizures, the capacity of a person to claim Fourth Amendment protection depends on a legitimate expectation of privacy in the invaded place or thing. A traffic stop requires <u>reasonable suspicion</u> that a suspect is committing or did commit a crime; a traffic stop does not require probable cause that a crime is being committed or has been committed. A stop is for a limited time and a limited purpose: long enough to dispel an officer's suspicion about the suspect. The 2014 United States Supreme Court decision, *Navarette v. California*, — U.S. —, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (Apr. 22, 2014), summed up the reasonable suspicion standard as follows: "Although a mere hunch does not create reasonable suspicion, *Terry*, [392 U.S.] at 27, 88 S. Ct. 1868, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable

cause, *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)." *Id.* at 1687 (internal quotation marks omitted).

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning" of the Fourth Amendment." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979); *see also United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993) (citing *Prouse*, 440 U.S. at 653, 99 S. Ct. 1391). According to *Terry*, "a law enforcement officer may briefly detain a vehicle, consistent with the Fourth Amendment, when the officer has reasonable suspicion that 'criminal activity may be afoot.' " *United States v. Gonzalez-Rodriguez*, 456 F. App'x 494, 497–98 (5th Cir. 2012) (per curiam) (quoting *Terry*, 392 U.S. at 30, 88 S. Ct. 1868); *see also United States v. Ibarra–Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999) (citing *Terry*, 392 U.S. 1, 88 S. Ct. 1868). To determine the reasonableness of a traffic stop, the Court must examine (1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20, 88 S. Ct. 1868.

Reasonable suspicion exists when the law enforcement officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Id.* at 21, 88 S. Ct. 1868; *see also United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). The Court "must look at the totality of the circumstances of [the] case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (citation and internal quotation marks omitted).

Courts must allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (internal quotation marks and citations omitted). The Court "must consider the collective knowledge and experience of the officers involved." *See*

*United States v. Holloway*, 962 F.2d 451, 459 n. 22 (5th Cir. 1992). "[O]fficers are entitled to rely on their training and experience in order to make inferences and deductions from the information available to them." *Gonzalez-Rodriguez*, 456 F. App'x at 499; *see Arvizu*, 534 U.S. at 273, 122 S. Ct. 744; *Terry*, 392 U.S. at 27, 88 S. Ct. 1868; *United States v. Brigham*, 382 F.3d 500, 504, 508 (5th Cir. 2004) (en banc) (holding that a police officer had a right to rely on his experience of over five years at DPS in determining that the defendant's "extreme nervousness, his avoidance of eye contact, and his pattern of answering the officer's questions with questions of his own" indicated that he might be lying); *United States v. Grant*, 349 F.3d 192, 198–99 (5th Cir. 2003).

An officer's "inarticulate hunches" do not suffice as a basis for reasonable suspicion. *Terry*, 392 U.S. at 22, 88 S. Ct. 1868. However, an officer's reasonable suspicion "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274, 122 S. Ct. 744 (internal citation omitted). "Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *Ibarra–Sanchez*, 199 F.3d at 759 (internal citations omitted). An analysis of reasonable suspicion "is made by looking at all the circumstances together to weigh not the individual layers but the laminated total," *id.* at 759 n.5 (internal quotation marks and citation omitted).

"Reasonable suspicion depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Navarette*, 134 S. Ct. at 1690 (quoting *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (internal quotation marks omitted)). The Supreme Court stated in *Navarette*: "[W]e have consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" *Id.* at 1691 (quoting *Arvizu*, 534 U.S. at 277, 122 S. Ct. 744). Thus, just because the Defendant could have committed these actions innocently does not mean Officer Joiner was not

justified in stopping the Defendant based on his set of suspicious behaviors. Nor was it necessary for Officer Joiner to continue to observe the Defendant's behaviors before stopping him once reasonable suspicion was established.

At the suppression hearing, the Court heard testimony from Sergeant Don Taylor, who has been employed as a law enforcement officer at the Shelby County Sheriff's Department in Shelby County, Tennessee for approximately 18 years and has been employed as part-time security for Brown Baptist for approximately 6 years. Sergeant Taylor testified that he had seen the Defendant trespassing on Brown Baptist property on April 6, 2016, but had also seen him trespassing on prior repeated occasions, and on all occasions had warned him to leave the property. *See* Suppression Hr'g Tr. [43] at 14, 15, 38. Sergeant Taylor further testified that Brown Baptist security had flagged down a Southaven police officer who was patrolling the area (Officer Joiner) and informed him that the Defendant had been trespassing on Brown Baptist property, was driving a green Ford Taurus, had been spotted with firearms, that the Defendant had complained that someone was carrying out trees from his family property that borders the northern property line of Brown Baptist property and is in Tennessee, and that the Defendant's mental state was questionable; Officer Joiner was unable to locate the Defendant on Brown Baptist property at that time. *Id.* at 16–18, 21, 44. The Court also heard testimony from Officer Joiner, who performed the traffic stop on the Defendant; Officer Joiner has been employed as a law enforcement officer at the Southaven Police Department for 3 years. *Id.* at 41.

Given the facts and circumstances *in toto*, Officer Joiner had reasonable suspicion to believe the Defendant possibly fit the description of the male who had been allegedly trespassing on church property in possession of firearms, and his vehicle fit the description of the alleged trespasser's vehicle, a green Ford Taurus. Based on the law, Officer Joiner had reasonable suspicion to believe the crime of trespassing was occurring when he stopped the Defendant.

From that point, the Defendant's alleged actions created probable cause for law enforcement officers to search the Defendant's vehicle pursuant to the *Carroll* automobile exception, which the Fifth Circuit has explained as follows:

> Under the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband. *See United States v. Ross*, 456 U.S. 798, 807–09, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). The exception is justified by the mobility of vehicles and occupants' reduced expectations of privacy while traveling on public roads. *See California v. Carney*, 471 U.S. 386, 392–93, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985). It has been applied to warrantless searches of vehicles parked in driveways or lots other than those used by the defendant for residential purposes. *See, e.g., Pennsylvania v. Labron*, 518 U.S. 938, 939–40, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996) (applying the exception to the search of a vehicle located on a city street and another located outside of a farmhouse); *Mack v. City of Abilene[, Tex.]*, 461 F.3d 547, 550, 552 (5th Cir. 2006) (applying the exception to the search of a vehicle located in a parking lot outside of a restaurant and another located in the defendant's apartment complex parking lot); *United States v. Sinisterra*, 77 F.3d 101, 105 (5th Cir. 1996) (applying the exception to the search of a vehicle found in a parking lot outside of a shopping center).

*United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016), *cert. denied*, (U.S. Oct. 3, 2016).

The Government argues that the following events created probable cause for the warrantless search: (a) Officer Joiner observed the Defendant, his vehicle, and his behavior—all of which fit the description Sergeant Taylor and other Brown Baptist security provided the night before the stop; (b) the Defendant stopped his vehicle abruptly in front of Officer Joiner to confront him—which Officer Joiner considered bizarre behavior; (c) Officer Joiner observed the Defendant acting "extremely nervous"; (d) Officer Joiner observed a large flash light in the Defendant's lap and a lighter torch in his hand; (e) the Defendant reluctantly complied with Officer Joiner's commands to show his hands after making several furtive gestures under the driver's seat; (f) the Defendant was evasive in answering Officer Joiner's questions and when asked whether there were any weapons in the vehicle responded that he would rather not say; (g) the Defendant

refused to answer Officer Joiner's question concerning whether there were narcotics in the vehicle; and (h) Sergeant Jason Scallorn's K-9 partner detected narcotics in the Defendant's vehicle during the open air sniff test. All of these factors created probable cause for the warrantless search.

Fifth Circuit law is clear that "[a] positive alert by a trained canine creates probable cause to search a vehicle." *United States v. Platt*, 558 F. App'x 470, 471 (5th Cir. 2014) (per curiam) (citing *United States v. Sanchez–Pena*, 336 F.3d 431, 444 (5th Cir. 2003)). Once the K-9 partner alerted to the presence of narcotics in the Defendant's vehicle during the open air sniff, the officers had probable cause to search the Defendant's vehicle for narcotics without obtaining a warrant.

The United States Supreme Court recently cautioned that an otherwise-completed traffic stop may not be extended to conduct a dog sniff unless there is reasonable suspicion to detain the individual. *See Rodriguez v. United States*, — U.S. —, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (Apr. 21, 2015). The Supreme Court stated in *Rodriguez* that "[a] dog sniff . . . is a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing' " and is thus not an ordinary incident of a traffic stop. *Id.* Thus, there must be reasonable suspicion to detain the Defendant prior to the dog sniff. " 'An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime.' " *United States v. Spears*, 636 F. App'x 893, 901 (5th Cir. 2016) (per curiam) (quoting *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *modified on other grounds*, 622 F.3d 383 (5th Cir. 2010)).

However, in this case, other circumstances established reasonable suspicion to further detain the Defendant to complete the dog sniff. Furthermore, the evidence demonstrates that Sergeant Scallorn arrived on the scene within two to three minutes during Officer Joiner's initial conversation with the Defendant and before Officer Joiner requested the K-9 officer. *See* Suppression Hr'g Tr. [43] at 60.

11

Unquestionably, there was both reasonable suspicion for the stop and dog sniff, and the dog response and other circumstances created probable cause for the warrantless search. *See, e.g., United States v. Flores-Manjarez*, 421 F. App'x 407, 410 (5th Cir. 2011) (per curiam) (finding probable cause when, *inter alia*, defendant had exhibited nervousness and gave contradictory and evasive answers to questions); *United States v. Benjamin*, 36 F.3d 91, 1994 WL 523916, at *3 (5th Cir. 1994) (per curiam) (probable cause demonstrated by defendants' inconsistent stories, one defendant's lie about criminal record, the officer's observation that he smelled marijuana at the back of the vehicle, and one defendant's admission that he was nervous at the time); *United States v. Thompson*, 996 F.2d 307, 1993 WL 241884, at *1 (5th Cir. 1993) (per curiam) ("The dog's alert to the right rear area of the vehicle and Thompson's nervousness and agitation provided the officers with probable cause to believe that narcotics were concealed in that area" and thus justified warrantless search of vehicle).

Because the stop was otherwise constitutional, the officer's request that the Defendant step out of his vehicle was also justified based on *Maryland v. Wilson*.

Finally, because the stop and search were constitutional, the subsequent interrogations were not fruit of the poisonous tree. However, the Defendant also makes a separate challenge to the interrogation that produced his confession or statement: that his "statement was not freely and voluntarily given but was the process of police duress, coercion, physical and mental torture and harassment, coupled with promises of favor made by police . . . ." Def.'s Mot. Suppress [25] at 2. Specifically, the Defendant argues that any statements he made in the first interview were involuntary due to a particular statement made by Detective Brandon Rushing while he was giving the Defendant his *Miranda* right and an act by Detective Rushing of throwing a plastic cup of water onto the Defendant near the close of the interview.

"In order to use an in-custody statement against a defendant at trial, the government must demonstrate that the defendant was warned of his right to remain silent and his right to consult

12

with an attorney." *United States v. Anderson*, 755 F.3d 782, 790 (5th Cir. 2014); *see Miranda v. Arizona*, 384 U.S. 436, 471, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial." *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citation and internal quotation marks omitted). We consider the totality of the circumstances to determine if "the statement is the product of the accused's free and rational choice," and thereby voluntary. *Id.* "A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996). "In order for a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and that there was a link between the coercive conduct of the police and his confession." *Bell*, 367 F.3d at 461 (citing *Colorado v. Connelly*, 479 U.S. 157, 163–65, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986)).

In this case, after the Defendant was arrested, at 1:06 a.m. on April 8, 2016, Detective Rushing, who has been employed approximately 8 years by the Southaven Police Department and has conducted more than 100 custodial interviews, interviewed the Defendant at the Southaven Police Department with Officer Jeremy Bond present. Suppression Hr'g Tr. [43] at 115, 135. The video of this interview, as well as Detective Rushing's testimony at the suppression hearing, demonstrate that at the beginning of the interview, Detective Rushing informed the Defendant he wanted to talk to him to hear his "side of the story," and the Defendant responded, "I'd like to be able to tell that." Subsequently, Detective Rushing read the Defendant his *Miranda* rights[1] prior to beginning questioning, and specifically stated as follows:

---

[1] "These warnings (which have come to be known colloquially as *Miranda* rights) are: a suspect has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Dickerson v. United States*, 530 U.S. 428, 435, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000) (internal quotation marks and citation omitted).

13

> There is one [*Miranda* right] that says "if you can't afford a lawyer, one will be appointed for you before any questions if you wish," and that is your right; as a citizen, that's your right. You don't have to speak to me without a lawyer, but I would be doing you a disservice if I didn't also tell you that—just like that's your right—it's my right not to give you another chance. So, as long as I . . . . I would want to make that clear to you. Okay?

The video footage further indicates that the Defendant agreed to waive his *Miranda* rights. *See id.* at 138–39. According to the video footage, Detective Rushing then handed the Defendant a Waiver of *Miranda* Form. *See id.* at 139. The Defendant apparently acknowledged his rights by initialing each line, and Detective Rushing proceeded with the interview, asking the Defendant questions concerning the alleged criminal activity.

As stated, in the case *sub judice*, the Defendant challenges the voluntariness of his confession due to Detective Rushing's statement that if the Defendant chose not to talk to him he did not have to give him another chance. In *Bell*, the defendant claimed that the two interrogation techniques used with him were "informing [him] that if he lied he could go to jail" and "lying to [him] about the existence of physical evidence to the [alleged criminal conduct," and that these two techniques effectively forced him to make his confession. *See Bell*, 367 F.3d at 462. "[The Fifth] Circuit has held that trickery or deceit is only prohibited to the extent that it deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* at 461 (citing *Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) (en banc); *see also Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992) (finding that mere trickery alone will not necessarily invalidate a confession).

In this case, after considering the totality of the circumstances surrounding Detective Rushing's interview of the Defendant, the Court concludes that the statements made by the Defendant were voluntary. The record reflects that the Defendant is a relatively intelligent individual who was 41 at the time of the interview and had been arrested on at least one other occasion. *See United States v. Gallardo–Marquez*, 253 F.3d 1121, 1123 (8th Cir. 2001) (finding

14

confession was voluntary where defendant was of average intelligence and had prior experience with law enforcement). Furthermore, at the beginning of the interview, the Defendant expressed his interest to tell his side of the story. And later, when giving the Defendant his *Miranda* rights, Detective Rushing did not raise his voice or make physical threats or any specific promise. Detective Rushing merely informed the Defendant that he (Detective Rushing) did not have to "give [the Defendant] another chance," which although far from ideal law enforcement conduct while Mirandizing a suspect, does not alone rise to the level of coercion. And even assuming *arguendo* Detective Rushing's conduct was coercive, the Defendant has not established any link between Detective Rushing's statement and the Defendant's statements concerning his culpability to Detective Rushing. *See Bell*, 367 F.3d at 462. Detective Rushing's conduct did not force the Defendant to confess culpability. The conduct did not overcome the Defendant's will, and any statements he gave to Detective Rushing were thus voluntary. *See id.*

In the approximately last 2 minutes and 30 seconds of interview footage, Detective Rushing stood and struck a plastic cup of water across the room off the table and onto the Defendant. Although this act by Detective Rushing was unprofessional, inappropriate, and unnecessary, it occurs at the close of the interrogation. The Government maintains that at that point the interview had transitioned from culpability to officer safety when investigating the Defendant's family property and whether there were explosive devices present that might cause harm to the investigating officers, and the Court finds that based on its viewing of the video, as well as all of the exhibits and testimony concerning the interview, that this argument is well taken. This act did not taint the prior questioning, nor did it taint the subsequent interview by ATF Task Force Agent Timothy Douglas on April 8, 2016, which occurred without incident. Thus, any statements made by the Defendant in his custodial interview with Detective Rushing shall not be suppressed at trial.

In sum, based on all of the foregoing, the Defendant's motion to suppress evidence [25] is

15

DENIED. In addition, the Defendant's motion to strike [50] the Government's rebuttal brief [48] is DENIED AS MOOT, because the Court did not consider the Government's rebuttal in its determination.

An order in accordance with this opinion shall issue this day.

THIS, the 5th day of December, 2016.

_____
SENIOR U.S. DISTRICT JUDGE